CADENCE DESIGN SYSTEMS, INC., a Delaware corporation, Plaintiff–Appellant–Cross–Appellee,

v.

AVANT! CORPORATION, formerly Arcsys, Inc., a Delaware corporation, Defendant–Appellee–Cross–Appellant.

Nos. 99–17648, 99–17649.

United States Court of Appeals, Ninth Circuit.

Filed June 11, 2001

Before: SNEED, SILVERMAN, Circuit Judges, and SEDWICK,[1] District Judge.

### ORDER

We certify to the California Supreme Court the question set forth in Part III of this order. All further proceedings in this case are stayed pending receipt of the answer to the certified question. This appeal *is withdrawn from submission and will be resubmitted after receipt of the Califor-*

1. The Honorable John W. Sedwick, District Judge, United States District Court for the District of Alaska, sitting by designation.

nia Supreme Court's opinion on the certified question. This panel retains jurisdiction over further proceedings in this court. The parties will notify the Clerk of this court within one week after the California Supreme Court accepts or rejects certification and again within one week after that court renders its opinion.

## I.

Pursuant to Rule 29.5 of the California Rules of Court, a panel of the United States Court of Appeals for the Ninth Circuit, certifies to the California Supreme Court a question of law concerning claims arising under California's Uniform Trade Secret Act, Cal. Civ.Code § 3426. The decisions of the California Supreme Court and the Ninth Circuit Court of Appeals provide no clear answer to the certified question, which may be dispositive in this appeal. Accordingly, we respectfully request that the California Supreme Court answer the question presented below. The California Supreme Court may reformulate the question. *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 238 F.3d 1159, 1160 (9th Cir.2001). We agree to follow the answer provided by the California Supreme Court.

## II.

The caption of the case is:

CADENCE DESIGN SYSTEMS, INC., a Delaware corporation,

Plaintiff–Appellant/Cross–Appellee,

v.

AVANT! CORPORATION, formerly Arcsys, Inc., a Delaware corporation,

Defendant–Appellee Cross–Appellant.

Counsel for the parties are as follows:

For Cadence Design Systems, Inc.: Keker & Van Nest, L.L.P. (John W. Keker, San Francisco, California).

For Avant! Corporation: O'Melveny & Myers LLP (Daniel H. Bookin, San Francisco, California).

## III.

The question certified is:

Under the California Uniform Trade Secrets Act ("UTSA"), Cal. Civ.Code § 3426, when does a claim for trade secret infringement arise: only once, when the initial misappropriation occurs, or with each subsequent misuse of the trade secret?

## IV.

The relevant facts are as follows:

Cadence and Avant! (pronounced ah VAHN tee) compete in the field of integrated circuit design automation. Both companies design "place and route" software, which enables computer chip designers to place and connect tiny components on a computer chip. Cadence formed in 1988 through the merger of several companies. Four senior employees left Cadence in 1991 to found Avant!, originally known as Arcsys.

In March 1994, Cadence Vice President Gerald Hsu ("Hsu") resigned from Cadence to sign on with Avant!. Because of Hsu's possession of valuable business trade secrets and other confidential information, Cadence informed Hsu that it objected to his working at Avant!. Concerned that Hsu would reveal proprietary Cadence information when managing Avant!, Cadence sent Avant! a draft complaint naming Avant! and Hsu as defendants. Cadence alleged trade secret misappropriation and other causes of action. In negotiating a settlement of Cadence's claims, Cadence and Avant! apparently did not discuss Avant!'s alleged use of Cadence's Framework II ("DFII") trade secret source code.[2]

---

**2.** Computer software programs are written in specialized languages called source code.

The source code, which humans can read, is

After extensive negotiations, in June 1994, the parties entered into a confidential settlement agreement (the "Agreement" or "Release") that included a mutual general release, which provided in part:

Cadence, [Avant!] and Hsu ... hereby forever release and discharge each other ... of and from any and all manner of action, claim or cause of action, in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, demands, losses, damages, costs or expenses, including without limitation court costs and attorneys' fees, *which they may have against each other at the time of the execution of this Agreement, known or unknown,* including but not limited to any claims arising out of, or in connection with, or relating directly or indirectly to the following: Hsu's employment with Cadence, the cessation of Hsu's employment with Cadence, any wrongful termination of Hsu, any age or race discrimination by Cadence with respect to Hsu, *any anticompetitive activity or unfair competition or trade secret misappropriation* by Cadence, Hsu or [Avant!] with respect to Cadence, Hsu or [Avant!] with respect to Cadence, Hsu or [Avant!] ... or any other actions taken by Cadence to with respect to Hsu or [Avant!] or by Hsu or [Avant!] with respect to Cadence.

(emphasis added).

The Agreement also contained in capital letters a California Civil Code section 1542 waiver with the following language:

THESE RELEASES EXTEND TO CLAIMS WHICH THE PARTIES DO NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR, WHICH IF KNOWN BY THEM WOULD HAVE MATERIALLY AFFECTED THEIR DECISION TO ENTER INTO THIS RELEASE.

.    .    .    .    .

In connection with such waiver and relinquishment, the *Parties acknowledge that they are aware that, after executing this Agreement, they or their attorneys or agents may discover claims or facts in addition to or different from those which they now know or believe to exist ... but that it is their intention hereby fully, finally and forever to settle and release all of the claims,* matters, disputes and differences known or unknown, suspected or unsuspected, which now exist, may exist, or heretofore may have existed against each other in connection with the released matters. *In furtherance of this intention, the release herein given shall be and remain in effect as a full and complete release notwithstanding the discovery or existence of any such additional or different claim or fact.*

(emphasis added).

In the summer of 1995, a Cadence engineer discovered a bug in Avant!'s ArcCell software program that was similar to a bug he had inadvertently created several years earlier when writing source code for Cadence's DFII product. In December 1995, the Santa Clara County District Attorney executed a search of Avant!'s headquarters. Among the items seized was a log that showed line-by-line copying of Cadence source code in 1991 by a former Cadence employee and Avant! founder.

In December 1995, Cadence sued Avant! for theft of its copyrighted and trade secret source code, and sought a preliminary order enjoining the sale of Avant!'s ArcCell and Aquarius products. In anticipation of trial, both sides filed cross-motions

---

then translated into language that computers can read. The computer readable form, which operates on a binary system, is called object code.

**1150**

for partial summary judgment concerning the effect of the Release. Avant! argued that because Cadence had released all its claims existing at the time of the Release, any claims based on continuing or future misuse of trade secrets that were stolen prior to the date of the Release were now barred. Cadence maintained that the only claims it had released were those for misappropriation occurring before the effective date of the Release, and not claims to redress Avant!'s continuing or new misuses of its trade secrets after the date of the Release.

The district court ruled on these summary judgment motions on October 13, 1999. Reversing field from its initial order, the district court held that all of Cadence's trade secret claims for post-Release misuse of its DFII trade secrets taken before the Release were barred by the Release. Cadence now appeals this decision. If the Release barred Cadence's claims existing at the time of the Agreement, but did not bar future claims, the question still remains: "What claims existed at the time of the Agreement?" Are all Cadence's claims for Avant!'s trade secret misappropriation part of the same claim, or does each successive misuse of Cadence trade secret source code give rise to a separate claim?

### V.

We respectfully submit that the question we pose regarding when a trade secret claim arises is worthy of certification because it is likely to emerge again in cases governed by the California UTSA, its answer may be dispositive in this case, and it is not directly answered by opinions of this court or the California Supreme Court. We are uncertain whether the California Supreme Court will take the position that a claim for trade secret infringement arises only once or repeatedly with subsequent misuses. We therefore respectfully request that the Supreme Court of California accept certification and resolve this question. Because of the pendency of the underlying claim and a related criminal trial, we respectfully ask that the Court expedite its treatment of this question. If the Court believes that the parties' briefs and record excerpts would be helpful to its determination of the question, we ask that the Court contact the Office of the Clerk of the Ninth Circuit Court of Appeals to request the relevant documents.

IT IS SO ORDERED.